**Donald J. Trump in hUNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NATIONAL NURSES ORGANIZING COMMITTEE/NATIONAL NURSES UNITED (NNOC/NNU),<br><br>Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America, and<br><br>ROBERT L. WILKIE, Jr., in his official capacity as Secretary of Veterans Affairs, and<br><br>DEPARTMENT OF VETERANS AFFAIRS<br>810 Vermont Avenue, N.W.<br>Washington, DC 20420<br><br>Defendants. | ) | Case No. 1:18-cv-2656<br><br>CIVIL ACTION |

**<u>COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF</u>**

**Introduction**

1. Plaintiff National Nurses Organizing Committee/National Nurses United, AFL-CIO is a labor union ("NNOC/NNU") representing 11,000 nurses in the Veterans Affairs medical system who provide direct care to our nation's Veterans. With their actions commencing on October 19, 2018, Defendant Donald J. Trump, in his official capacity as President of the United States of America, and Defendant Robert L. Wilkie, Jr., in his official capacity as Secretary of Veterans Affairs ("VA" or "Veterans Affairs" or the "Agency"), have embarked on a campaign to undermine and thwart the constitutional and statutory rights of the NNU and its members. By disapproving the parties' successor collective bargaining agreement for improper and specious reasons, seeking to prohibit the use of official time by VA employees, and

repudiating official time in the parties' current collective bargaining agreement, Defendants have violated Article II and the First Amendment of the United States Constitution, engaged in ultra vires conduct in violation of the Separation of Powers of the United States Constitution, and have violated Title V of the United States Code.

2. This case arises from Defendant Wilkie's October 19, 2018, disapproval of the successor Master Contract negotiated by Plaintiff NNOC/NNU and the VA, and his announcement of November 8, 2018, to eliminate 104,000 VA healthcare employees' use of Official Time for the purpose of representing an exclusive representative under the Federal Service Labor-Management Relations Statute ("FSLMRS"), 5 U.S.C. § 7101 et seq and repudiating all agreements between NNOC/NNU and the VA that allowed for Official Time.

3. Defendants are engaged in a deliberate campaign to eviscerate collective bargaining rights of VA healthcare employees in an outright affront to the rule of law. To disguise the Administration's attempt to destroy the collective bargaining rights of NNOC-represented RNs and other VA healthcare employees, Defendants have attempted to mask their actions by taking the unprecedented position that 38 U.S.C. Section 7422 authorizes the Secretary to repeal provisions of the FSLMRS. But any determination by Defendants that 38 U.S.C. Section 7422 serves as a basis for denying Official Time for NNOC/NNU representatives or to disapprove a successor collective bargaining agreement, which was negotiated and agreed upon by NNOC/NNU and the VA, is unconstitutional, arbitrary and capricious, and beyond the scope of statutory authority.

4. In furtherance of the Administration's desire to deny federal employees' statutory rights to engage in collective bargaining, Defendants are invoking executive power in contravention of the United States Constitution's command that the executive branch "take care that the laws be faithfully executed," acting in violation of the separation of powers of the United

States Constitution, and violating the First Amendment of the United States Constitution, impermissibly infringing on the right to freely associate, by eliminating all Official Time for all VA medical employees.

5. NNOC/NNU, in its own capacity and on behalf of its members, the Registered Nurses (RNs) it represents, hereby files this Complaint pursuant to Fed. R. Civ. P. Rule 3 against Defendants. NNOC/NNU seeks to vacate decisions by Defendant Trump's appointee, Defendant Wilkie, pursuant to 38 U.S.C. Section 7422, on the basis that the decisions are ultra vires and unconstitutional, and also constitute arbitrary and capricious decisions in excess of the Secretary's statutory authority under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.

**Parties**

6. Plaintiff NNOC/NNU is an unincorporated national labor organization with its principal place of business located at 155 Grand Ave., Oakland, CA 94612. NNOC/NNU is the certified collective bargaining representative of approximately 11,000 RN employees of the VA pursuant to 5 U.S.C. § 7101 et seq.

7. Defendant Donald J. Trump is sued in his official capacity as President of the United States of America.

8. Defendant Robert L. Wilkie, Jr. is sued in his official capacity as Secretary of Veterans Affairs.

9. The U.S. Department of Veterans Affairs is a federal agency whose headquarters are located at 810 Vermont Avenue, N.W. Washington, DC 20420.

**Jurisdiction and Venue**

10. This action seeks to vacate decisions by Defendant Secretary of Veterans Affairs Wilkie under 38 U.S.C. Section 7422 on the basis that they violate the Article II, Section 3 and the First Amendment of the United States Constitution and on the basis that they violate the

Administrative Procedures Act ("APA"), 5 U.S.C. § 706. Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1331.

11. Venue lies in this court under 28 U.S.C. Section 1391(e)(1) and (2).

**Factual Background**

12. RNs employed by the VA and represented by NNOC/NNU are employed pursuant to 38 U.S.C. Section 7421(b) and are sometimes referred to as Title 38 employees. The RNs provide care to our nation's Veterans, through a broad range of services, including but not limited to inpatient and outpatient services, care at and away from the bedside, working in units ranging from critical care units to in-home services, and also providing patient education.

13. NNU and the VA negotiated a National Master Contract ("Master Contract"), which was approved by then-VA Secretary Eric Shinseki on November 8, 2012, for a term of three years. The Master Agreement is extended by operation of Article 58 until a successor Master Contract is negotiated and approved.

14. Bargaining for a successor Master Contract between NNOC/NNU and the VA began on November 30, 2015. The parties reached an impasse with regard to ground rules, and a ground rules agreement was reached on November 8, 2016, with the assistance of the Federal Service Impasses Panel ("FSIP"). The parties then held approximately 13 bargaining sessions, reaching agreement on all but six proposals that were submitted to FSIP, which issued a Decision and Order on these remaining proposals on July 12, 2018.

15. The successor Master Agreement was then submitted to the NNOC/NNU membership and was ratified on September 13, 2018.

16. The ratified successor Master Agreement was transmitted to Defendant Wilkie for Agency Head Review on September 20, 2018.

17. On October 19, 2018, Defendant Wilkie disapproved the successor Master Agreement on the basis that the Agreement was purportedly contrary to law, rule or regulation. Enclosed with his letter noticing the disapproval of the successor Master Agreement was a copy of the ratified Agreement with comments rejecting approximately 357 agreed upon clauses and/or provisions, approximately 267 of which (about 75 percent) were status quo from the current Master Contract.

18. Approximately 230 of the reasons for disapproval were characterized as "Legal Issues," where Defendant Wilkie contended that the terms of the Agreement were contrary to law, rule or regulation. Approximately 127 other reasons for disapproval were characterized as "Clarifications," where Defendant Wilkie contended that the parties were required to return to the bargaining table to clarify "areas of confusion or ambiguity" before resubmitting for Agency Head Review. Prior to this time, the VA had never contended that any of the agreed upon provisions were unlawful or unclear.

19. Of the 230 legal reasons for disapproval, Defendant Wilkie claims that approximately 132 clauses contained within the successor Master Agreement were non-negotiable under 38 U.S.C. Section 7422 and approximately another 98 were contrary to other laws, rules or regulation. Again, none of the reasons for disapproval were ever raised by the VA as being unlawful or unclear. These rejections are not valid under either Section 7422 or any other applicable law.

20. Of the 127 clarifications that served as the basis for disapproval, Defendant Wilkie's rejection is not based on any law, rule or regulation. Rather, Defendant Wilkie rejected these provisions that the parties were free to negotiate and agree upon under the FSLMRS, because he disagreed with the language agreed to by the VA at the negotiating table.

21. Defendant Wilkie's disapproval of the successor Master Agreement is arbitrary and capricious, in excess of statutory authority, and contrary to constitutional right.

22. Immediately on the heels of his disapproval of the successor Master Agreement, on November 8, 2018, Defendant Wilkie repudiated the current Master Agreement as to all provisions related to Official Time.

23. In a notice of repudiation dated November 8, 2018, Defendant Wilkie alerted NNOC/NNU that its members "may no longer utilize Official Time because the use of Official Time by Title 38 employees negatively impacts patient care." On that basis, the VA repudiated thirteen different articles of the current Master Agreement, which allowed NNOC/NNU's members to use Official Time for contract administration and contract enforcement effective November 15, 2018. There is no factual, statistical, or empirical evidence, nor any rational basis, to substantiate Defendant Wilkie's claim that utilizing Official Time negatively impacts patient care.

24. Official Time is a mandatory subject of bargaining under the Federal Service Labor-Management Relations Statute ("FSLMRS"). Pursuant to 5 U.S.C. Section 7131, "any employee representing an exclusive representative in the negotiation of a collective agreement . . . shall be authorized Official Time for such purposes, . . . during the time the employee would otherwise be in duty status."

25. Medical employees of the VA, including RNs, have used Official Time since the enactment of the Department of Veterans Affair Healthcare Personnel Act of 1991, without conflict or claim of conflict between use of Official Time and patient care. Indeed, NNOC/NNU and the VA agreed in their Ground Rules bargaining not to open Article 47, Official Time as the parties significantly re-negotiated this provision in 2012, and the parties believed the current language was consistent with applicable law as to the provision of patient care.

26. By repudiating the Master Agreement's Official Time provisions, NNOC/NNU's approximately 85 RN representatives will be unable to represent the bargaining unit RNs on a regular basis and resolve disputes with VA management, from meetings concerning unsafe conditions for patients, as well as RNs, to day to day representation of RNs in investigatory meetings and grievance handling under Section 7114(2) of the FSLMRS, to changes in working conditions, where workplace disputes may no longer be resolved before disputes escalate further.

27. By enacting the FSLMRS, Congress undertook to guarantee federal employees the statutory right to engage in good-faith collective bargaining with agencies and executive branch officials, and the pronouncements that the FSLMRS makes are clearly based upon Congress's stated opinion that "the right of employees" to "bargain collectively . . . safeguards the public interest, contributes to the effective conduct of public business, and facilitates and encourages the amicable settlements of disputes" in regard to the "conditions of [federal] employment." 5 U.S.C. § 7101(a)(1).

28. To that end, subsections (a), (c), and (d) of section 7131 of the FSLMRS provide a list of certain activities for which a federal agency must grant "Official Time" to labor representatives, 5 U.S.C. § 7131(a) (negotiation of a collective bargaining agreement); *Id.* § 7131(c) (participation of proceedings before the FLRA, if that agency authorizes it); *Id.* § 7131(d) (official time granted in an amount agreed to be reasonably necessary, and in the public interest to any employee representing an exclusive representative or any employee in an appropriate unit represented by an exclusive representative).

29. The VA's new-found position is directly contrary to the stated purpose of the FSLMRS that collective bargaining is in the public interest, by its unilateral forfeiture of statutory rights and bargaining procedures without rational basis, contending that continuing to permit negotiated Official Time as required by the current Master Agreement negatively impacts

patient care. Again, there is no factual, statistical, or empirical evidence to support this contention.

30. The Agency's repudiation of the Master Agreement as to Official Time is not unlike the President's attempt to limit the use of Official Time across the entire federal government through Executive Order 13837 (the "Executive Order").

31. There, the Executive Order suggested that the work of an executive agency itself is the only relevant interest, by stating "[t]o advance this policy, executive branch employees should spend their duty hours performing the work of the Federal Government and serving the public." Exec. Order No. 13837, Section 1.

32. The Agency here is attempting to achieve the same goal. As stated by VA Acting Assistant Secretary for Human Resources and Administration Jacquelyn Hayes-Byrd on November 8, 2018 in a press release regarding the repudiation of Official Time: "It's common sense. Allowing health care workers to do taxpayer-funded union work instead of serving Veterans impacts patient care negatively. President Trump has made it clear – VA employees should always put Veterans first. And when we hire medical professionals to take care of Veterans, that's what they should do at all time. No excuses. No exceptions." As stated above, there is no factual, statistical, or empirical evidence, nor rational basis to support the contention that compliance with the FSLMRS and the allowance of Official Time has, or would, interfere with patient care.

33. That Executive Order was declared invalid by this Court, and the President and his subordinates were enjoined from implementing or giving effect to the Order. *American Federation of Government Employees, AFL-CIO v. Trump,* 318 F. Supp. 3d 370, 440 (D.D.C. 2018).

34. The Agency's repudiation of the Master Agreement as to Official Time is simply another bite at the apple to eliminate Official Time, albeit through a different statutory scheme. This time utilizing 38 U.S.C. Section 7422.

35. As this Court has already held, the Executive Branch cannot override Congress' recognition of the importance of Official Time, as codified in the FSLMRS. *American Federation of Government Employees, AFL-CIO v. Trump,* 318 F. Supp. 3d 370, 440 (D.D.C. 2018).

**COUNT I – Violation of the Take Care Clause of the United States Constitution Repudiation of All Provisions Related to the Use of Official Time**

36. Plaintiff hereby incorporates Paragraphs 1 through 35 of the Complaint.

37. The Take Care Clause requires that the President of the United States "shall take Care that the Laws be faithfully executed," U.S. Const. art. II, sec. 3. "Under our system of government, Congress makes laws and the President, acting at times through agencies. . . 'faithfully execute[s]' them." *Utility Air Regulatory Group v. E.P.A.,* 134 S. Ct. 2427, 2446 (2014).

38. Defendants' repudiation of the current Master Agreement as to all provisions related to the use of Official Time dismantles, rather than faithfully executes, Congress's mandate found in FSLMRS Section 7131, providing a list of certain activities for which an Agency must provide and negotiate Official Time.

**COUNT II – Violation of the First Amendment of the United States Constitution Repudiation of All Provisions Related to the Use of Official Time**

39. Plaintiff hereby incorporates Paragraphs 1 through 38 of the Complaint.

40. Defendants' repudiation of the current Master Agreement as to all provisions related to the use of Official Time restrains and retaliates against Plaintiff NNOC/NNU and its

members with regard to the right to freely associate under the First Amendment. U.S. Const. amend I.

41. Defendants do not attempt to hide their animus against unions in the repudiation of all provisions related to the use of Official Time. When announcing the VA-wide ban on Official Time provided for in FSLMRS Section 7131, Defendants brazenly attempt to justify the Trump Administration's animus towards union association by derogatorily, and without any substantiation, claiming that "[a]llowing health care workers to do taxpayer-funded union work instead of serving Veterans impacts patient care negatively." That claim is baseless and simply false.

42. Defendants' actions are in no manner content neutral and do not achieve any compelling state interest by the least restrictive means; rather Defendants blatantly discriminate against Plaintiff NNOC/NNU and its members with regard to the right to freely associate under the First Amendment. U.S. Const. amend I.

**COUNT III – Violation of the Separation of Powers Of the United States Constitution Repudiation of All Provisions Related to the Use of Official Time**

43. Plaintiff hereby incorporates Paragraphs 1 through 42 of the Complaint.

44. Plaintiff has a non-statutory right of action to enjoin and declare unlawful executive action that is ultra vires.

45. The United States Constitution does not vest the President of the United States with the power to legislate.

46. Defendants' repudiation of the current Master Agreement as to all provisions related to the use of Official Time is an attempt to exercise legislative power specifically withheld by Congress.

47. Congress's mandate found in 5 U.S.C. Section 7131 provides a list of certain activities for which an agency must provide or negotiate Official Time. Had Congress intended that the 38 U.S.C. § 7422(c) reference to "direct patient care" have any bearing on Official Time under the FSLMRS, it would have addressed it in the legislation, which it did not. The approximately 27 years of negotiation and use of FSLRMS Official Time by VA healthcare employees since the enactment of the Department of Veterans Affair Healthcare Personnel Act of 1991 clearly demonstrates that there was no conceivable repeal of FSLMRS Official Time by implication through Congress's enactment of the latter statute, which also explicitly recognized the right of VA healthcare employees to engage in collective bargaining. 38 U.S.C. § 7422(a).

48. Defendants' decision that Official Time conflicts with 38 U.S.C. Section 7422 and Defendants' repudiation of all provisions of the Master Contract that provide for Official Time, by claiming a non-existing exemption under 38 U.S.C. § 7422 for FSLMRS Official Time, are in direct contravention of 5 U.S.C. Section 7131. Defendants' action is ultra vires and void.

**COUNT IV – Administrative Procedures Act**
**Official Time Determination and Repudiation**

49. Plaintiff hereby incorporates Paragraphs 1 through 48 of the Complaint.

50. Section 706 of the APA provides in relevant part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be--
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

51. Defendants' repudiation of the current Master Agreement as to all provisions related to the use of Official Time and its decision that the provision of Official Time conflicts with 38 U.S.C. Section 7422 are contrary to constitutional and statutory right, arbitrary and

capricious and should be set aside. Defendants also acted outside the scope of their statutory authority by repudiating the Agreement and prohibiting the use of Official Time.

52. The repudiation of the current Master Agreement is a final agency action ripe for review under the APA.

53. 38 U.S.C. Section 7422(b) states: "Such collective bargaining . . . in the case of [Title 38 employees] may not cover, or have any applicability to, any matter or question concerning or arising out of (1) professional conduct or competence, (2) peer review, or (3) the establishment, determination, or adjustment of employee compensation under this title." 38 U.S.C. Section 7422(c) states that "'professional conduct or competence' means any of the following: (1) Direct patient care. (2) Clinical competence."

54. The Agency has taken the position that the use of Official Time is in direct conflict with the exclusions from collective bargaining listed in Section 7422(b).

55. The use of Official Time, however, does not have any applicability to any matter concerning professional conduct or competence, peer review, or the establishment, determination, or adjustment of employee compensation.

56. The Agency's interpretation is not a reasonable interpretation of the statute, particularly when compared to the Congressional mandate found in FSLMRS Section 7131, providing a list of certain activities for which an agency must provide Official Time. Accordingly, the Agency's interpretation is not entitled to deference, is arbitrary and capricious, contrary to constitutional and statutory right, and beyond the scope of statutory authority.

57. Plaintiff therefore respectfully requests that the Court hold unlawful Defendants' repudiation of the current Master Agreement as to Official Time and Defendants' determination that Official Time is non-negotiable under 38 U.S.C. Section 7422.

**COUNT V – Administrative Procedures Act**
**Rejection of Successor Collective Bargaining Agreement under Section 7422**

58. Plaintiff hereby incorporates Paragraphs 1 through 57 of the Complaint.

59. Section 706 of the APA provides in relevant part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be--
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

60. Defendants' disapproval of the successor Master Agreement under 38 U.S.C. Section 7422 is arbitrary and capricious, as well as outside the scope of statutory authority.

61. 38 U.S.C. Section 7422(b) states: "Such collective bargaining . . . in the case of [Title 38 employees] may not cover, or have any applicability to, any matter or question concerning or arising out of (1) professional conduct or competence, (2) peer review, or (3) the establishment, determination, or adjustment of employee compensation under this title."

62. 38 U.S.C. Section 7422(c) defines "professional conduct or competence" as "direct patient care" or "clinical competence."

63. The approximately 132 agreed upon clauses which were rejected as non-negotiable under Section 7422 do not cover, or apply to, any matter or question concerning or arising out of professional conduct or competence, peer review, or the establishment, determination, or adjustment of employee compensation.

64. A review of the involved clauses reveals that the stated reasons for disapproval are specious in nature. For example, Article 6: RN Rights, Section 14: Group Meetings served as a basis for Defendant Wilkie's rejection of the successor Master Agreement. This provision simply states: "When the Department conducts group meetings with RNs and the topics include

personnel policies, practices, or working conditions, NNU will be notified in advance and given the opportunity to be present." Defendant Wilkie states as the basis for the rejection that "meetings that deal with 38 USC 7422 [sic] topics do not entitle RNs to union attendance." This rejection is arbitrary and capricious because this provision has nothing to do with of (1) professional conduct or competence, (2) peer review, or (3) the establishment, determination, or adjustment of employee compensation.

65. In another instance, Defendant Wilkie found that another agreed upon provision that states, "RNs who have been previously approved for annual leave, but do not have enough annual leave or compensatory time available to cover their absence when the leave period arrives, will not be able to take annual leave," conflicted with Section 7422's prohibition on negotiating employee compensation. Again, the basis for this rejection is arbitrary and capricious because this provision is not applicable to the establishment, determination, or adjustment of employee compensation. It has nothing to do with establishing when an RN will be compensated, only when an RN may not be able to take annual leave.

66. Similarly baseless, Defendant Wilkie rejected a provision related to RN vacancy procedures. Specifically, the provision at issue states, "the Department will provide draft positions announcements for the newly created bargaining unit positions to NNU which may submit comments within 48 hours of receipt." Defendant Wilkie claimed that this provision constitutes bargaining over professional conduct and competence, which is not permitted under Section 7422. But again, that the Agency has agreed to give NNU the ability to comment on draft position announcements does not have any application to professional conduct or competence, or direct patient care or clinical competence as "professional conduct or competence" is defined by the statute. This rejection is arbitrary and capricious.

67. The extreme and egregious nature of Defendants' disapproval of the successor Master Agreement on approximately 132 grounds related to Section 7422 makes the decision incomprehensible and evidences an unreasonable interpretation of the applicability and scope of Section 7422. In essence, the sheer volume of alleged deficiencies is evidence that Defendants' disapproval is simply a pretext for undermining the Congressionally enacted statutory scheme.

68. Thus, Defendants' decision is not entitled to deference under the APA. Defendants have exceeded statutory authority when disapproving the successor Master Contract as a whole, and the decision is arbitrary and capricious.

69. Because each of the 132 bases are not related to 38 U.S.C. Section 7422, Defendants' disapproval of each of these provisions is not a reasonable interpretation of the statute and is therefore not entitled to deference under the APA. As such, Defendants have exceeded statutory authority when disapproving each provision on Section 7422 grounds in a manner that is fully lacking rationality or reasoned decisionmaking, and such disapproval is arbitrary and capricious. Plaintiff therefore respectfully requests that the Court hold unlawful and set aside the disapproval of the successor Master Contract.

**COUNT VI – Administrative Procedures Act**
**Rejection of Successor Collective Bargaining Agreement under FSLMRS**

70. Plaintiff hereby incorporates Paragraphs 1 through 69 of the Complaint.

71. Section 706 of the APA provides in relevant part:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be--
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

72. Defendant Wilkie's disapproval of the successor Master Contract for the reasons listed that are unrelated to the Section 7422 issues exceeds the scope of his authority under Section 7114(c)(2) of the FSLMRS, and the disapproval of the successor Master Contract on these bases is arbitrary and capricious.

73. 5 U.S.C. Section 7114(c)(2) states: "The head of the agency shall approve the agreement within 30 days from the date the agreement is executed if the agreement is in accordance with the provisions of this chapter and any other applicable law, rule, or regulation (unless the agency has granted an exception to the provision)."

74. Defendant Wilkie disapproved approximately 225 clauses and/or provisions of the agreed upon successor Master Contract, which are unrelated to Section 7422. Not one of these approximately 225 clauses and/or provisions is contrary to law, rule or regulation.

75. Defendant rejected these provisions notwithstanding the statutory scheme allowing the parties to negotiate and agree on these terms as provided in the FSLMRS. Where the provisions were not rejected on legal grounds, Defendant is attempting to re-bargain language already agreed to by the VA's negotiators. A review of these involved clauses reveals again that the stated reasons for disapproval are irrational and arbitrary and capricious in nature.

76. In many instances, Defendant Wilkie simply rejected a provision because he did not agree with what his own bargaining team had agreed to. For example, Defendant Wilkie rejected a provision that states, "the Department may provide designated parking for pregnant RNs." Defendant Wilkie rejected this provision on an alleged legal basis that RNs should be required to request a reasonable accommodation for a reserved parking space pursuant to 42 U.S.C. Section 12102(2)(A). But, while the Americans with Disabilities Act certainly permits federal employees to seek an accommodation of this type, it does not prevent the Agency from agreeing to reserve parking spaces. Because Defendant Wilkie would have preferred a different

Agency stance during bargaining does not entitle him to arbitrarily and capriciously reject the provision on the basis of law and act outside of his statutory authority under 5 U.S.C. Section 7114(c)(2), and any such contention is nonsensical.

77. In other instances, Defendant Wilkie rejected the successor Master Agreement because he did not like the language used, not because the provision was allegedly contrary to any applicable law, rule, or regulation. For example, he rejected the Agreement because "National Nurses Organizing Committee, National Nurses United" was not identified in the preamble to the Agreement as "NNOC/NNU." To suggest the lack of a definition as contrary to law, rule, or regulation is laughable, and a rejection on this basis is arbitrary and capricious and outside of the scope of the Secretary's authority under 5 U.S.C. Section 7114(c)(2).

78. Defendant Wilkie also rejected a provision which states, "disciplinary and adverse actions will be impartial, taken with due process, not based on gossip or unsubstantiated rumor, and timely, based on the circumstances and complexity of the case," because he somehow concluded the phrase "based on the circumstances and complexity of the case" required clarification. This is status quo language from the prior Agreement, and certainly within the Agency's authority to agree upon. This language is not contrary to any applicable law, rule, or regulation, and a rejection on this basis is arbitrary and capricious and outside of the scope of authority under 5 U.S.C. Section 7114(c)(2).

79. The extreme and egregious nature of Defendants' disapproval of the successor Master Contract on 225 grounds unrelated to Section 7422 makes Defendants' action incomprehensible and evidences an unreasonable interpretation of 5 U.S.C. Section 7114(c)(2). Thus, Defendants' decision is not entitled to deference under the APA. Defendants exceeded statutory authority when disapproving the successor Master Contract as a whole, and the decision is arbitrary and capricious. Again, the sheer volume of alleged deficiencies is evidence that

Defendants' disapproval is simply a pretext for undermining the Congressionally enacted statutory scheme.

80. Because each of these approximately 225 bases for rejection is invalid, Defendants' disapproval of each of these provisions is again not a reasonable interpretation of the statute and is therefore not entitled to deference under the APA. Defendants exceed statutory authority when disapproving these provisions, and the decision on each of these provisions is arbitrary and capricious.

81. Defendants' disapproval of the successor Master Contract on these approximately 225 grounds is not a reasonable interpretation of the statute and is therefore not entitled to deference under the APA.

82. Accordingly, the disapproval of the successor Master Agreement was arbitrary and capricious and exceeded the scope of the Secretary's authority.

83. Plaintiff therefore respectfully requests that the Court hold unlawful and set aside Defendants' disapproval of the successor Master Agreement.

**Prayer for Relief**

**WHEREFORE, NNOC/NNU** prays that this Honorable Court enter an ORDER:

1. Declaring that Defendants' repudiation of all provisions of the Master Contract relating to the use of Official Time is void and contrary to the Take Care Clause of the United States Constitution;

2. Declaring that Defendants' repudiation of all provisions of the Master Contract relating to the use of Official Time is void and contrary to the First Amendment of the United States Constitution;

3. Declaring that Defendants' repudiation of all provisions of the Master Contract relating to the use of Official Time is void, ultra vires, and contrary to the Separation of Powers of the United States Constitution;

4. Declaring Defendants' repudiation of all provisions of the Master Contract relating to the use of Official Time is contrary to constitutional right, power, privilege, or immunity, in violation of the APA.

5. Declaring Defendants' repudiation of all provisions of the Master Contract relating to the use of Official Time is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA;

6. Declaring Defendants' repudiation of all provisions of the Master Contract relating to the use of Official Time is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of the APA;

7. Setting aside Defendants' repudiation of all provisions of the Master Contract relating to the use of Official Time;

8. Enjoining Defendants from repudiating any provisions of the Master Contract relating to the use of Official Time;

9. Declaring Defendants' disapproval of the successor Master Contract is unlawful because it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA;

10. Declaring Defendants' disapproval of the successor Master Contract is unlawful because it is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, in violation of the APA;

11. Setting aside Defendants' disapproval of the successor Master Contract;

12. Granting Plaintiff attorney's fees and costs;

13. Granting such other relief as this Court finds necessary and proper.

DATED: November 16, 2018

Respectfully submitted,

/s/ Diana M. Bardes
Diana M. Bardes (DC Bar No. 1010075)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street, NW, Suite 400
Washington, D.C. 20036
(202) 783-0010
(202) 783-6088 Facsimile
dbardes@mooneygreen.com
*Counsel for the Plaintiff*

/s/ Micah L. Berul
Micah L. Berul (to be admitted *pro hac vice*)
National Nurses Organizing Committee/
National Nurses United (NNOC/NNU)
155 Grand Ave.
Oakland, CA 94612
Tel: 510-273-2292
Fax: 510-663-4822
mberul@nationalnursesunited.org
*Counsel for Plaintiff*